The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARRIVALSTAR S.A. and MELVINO TECHNOLOGIES LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>HAPAG-LLOYD USA, LLC,<br><br>Defendant. | NO. C11-00912 RSM<br><br>DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION: ARRIVALSTAR'S RECKLESSLY AGGRESSIVE LITIGATION TACTICS

Plaintiffs ArrivalStar S.A. and Melvino Technologies Limited ("ArrivalStar") is an aggressive non-practicing entity, or a "patent troll" (such as the mythical troll that lives under a bridge and demands a "toll" to pass), whose aggressive and extortive litigation tactics have been widely documented. In short, patent troll ArrivalStar sues and then demands a "license," using the argument that "the license is less expensive than litigation." In *Elen IP LLC v. Arvinmeritor, Inc.*, this Court criticized this very conduct, where a patent troll sues a large number of defendants and induces those defendants to settle to avoid the cost of litigation. 2011 WL 3651113, *8 (W.D. Wash. 2011). Additionally, in a decision affirmed by the Federal Circuit, this Court awarded sanctions against a patent troll for perpetuating this very sort of improper conduct. *See Eon-Net LP v. Flagstar Bancorp*, 2011 WL 3211512 (Fed. Cir. 2011).

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 1 (C11-00912 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

The ignominious antics of patent troll ArrivalStar are legion.[1] For example, in the past two months alone, ArrivalStar has sued at least 17 new defendants, bring the total number of extortious Complaints filed to over 100. Exhibit 1. In fact, a 2009 article in the University of Pennsylvania Law Review listed two of ArrivalStar's patents (U.S. Patent Nos. 6,758,318 and 6,904,359)[2] among the most-litigated patents in the country. Exhibit 2. To reach such an impressive distinction, ArrivalStar incredulously targets defendants, filing suits against victims ranging from shipping companies like Hapag-Lloyd, to booksellers Barnes & Noble (Exhibit 3), to Kohl's Department Stores (Exhibit 4), to governmental entities like King County Metro Transit (Exhibit 5) and the Port Authority of New York and New Jersey (Exhibit 6), to name a few. And of these 100+ patent infringement suits against various defendants, ArrivalStar recently asserted that none had even reached claim construction, indicating that early and cheap settlements are often reached. *See In re: ArrivalStar S.A. Fleet Mgmt. Sys. Patent Litigation*, MDL No. 2253, Order Denying Transfer at 2 (J.P.M.L. Aug. 9, 2011).

Given these tactics, ArrivalStar does not concern itself with the facts or law, as ArrivalStar uses litigation as a tool when it suits its purposes (and then settles or dismisses when the legal road gets rough). In this case, Hapag-Lloyd explained early on that infringement was impossible as plead, but ArrivalStar now persists with an erroneous and impossible legal theory.

---

[1] *See* J.J. Barrow, *Track This (Litigation) Vehicle*, The Patent Examiner (9/30/2011), http://patentexaminer.org/2011/09/arrivalstar-and-melvino-technologies-have-filed-more-than-100-patent-lawsuits/ (attached as Exhibit 1); John R. Allison, Mark A. Lemley, & Joshua Walker, *Extreme Value or Trolls on Top? The Characteristics of the Most-Litigated Patents*, 158:1 U. Pa. L. Rev. 1 (2009) (attached as Exhibit 2); Owen Covington, *New Breed, Mother Murphy's Face Claims Over Tracking Tools*, The Business Journal (3/18/2011), http://www.bizjournals.com/triad/print-edition/2011/03/18/new-breed-mother-murphys-face-claims.html?s=print (attached as Exhibit 3); Leigh Kamping-Carder, *Kohl's, Others Targeted in Latest ArrivalStar IP Blitz*, Law 360 (4/19/2011), http://www.law360.com/articles/240180/kohl-s-others-targeted-in-latest-arrivalstar-ip-blitz (attached as Exhibit 4); Scott Gutierrez, *King Co. Sued Over Real-Time Bus-Tracker*, Seattle Post-Intelligencer (5/6/2011), http://www.seattlepi.com/local/article/Metro-lawsuit-1366232.php#ixzz1ZqPKLg36 (attached as Exhibit 5); Mike Cherney, *Buses, Trains Targeted in Vehicle Tracking IP Suit*, Law 360 (3/18/2011), http://www.law360.com/articles/233177/buses-trains-targeted-in-vehicle-tracking-ip-suit (attached as Exhibit 6); Kevin Bell & Richard Oparil, *Opinion: Passing Through the Patent 'Troll' Booth*, Transport Topics Online (4/22/2011), http://www.ttnews.com/articles/printnews.aspx?storyid=26526 (attached as Exhibit 7); Dave Donoghue, *Staving Off Patent Trolls: Four Initial Steps to Protect Your Company*, Retail Patent Litigation (8/4/2011), http://www.retailpatentlitigation.com/2011/08/04/staving-off-patent-trolls-four-initial-steps-to-protect-your-company/ (attached as Exhibit 8).

[2] U.S. Patent No. 6,904,359 is one of the asserted patents in this case.

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 2
(C11-00912 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

Indeed, Hapag-Lloyd has explained (as set forth in its motion to dismiss) that there is no theory under which Hapag-Lloyd can possibly infringe the asserted patents. In response, and although never mentioned in the Complaint, ArrivalStar now divines an argument that 35 U.S.C. § 271(g) allegedly supports its patent claims. The law does not.[3] Accordingly, as ArrivalStar's Opposition fails to set forth a facially plausible claim, Hapag-Lloyd respectfully requests that the Court grant its motion to dismiss.

## II. SUMMARY OF ARGUMENT: 35 U.S.C. § 271(g) DOES NOT COVER THE TRANSMISSION OF INFORMATION

The Federal Circuit has clearly established that patent method claims can only be infringed if each and every step of the claimed method is performed within the United States. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F. 3d 1282, 1318 (Fed. Cir. 2005). Hapag-Lloyd's servers, required to allegedly perform steps of the asserted methods, are located outside of the United States. Despite this undisputed fact, ArrivalStar's Opposition argues that the asserted methods are somehow infringed under 35 U.S.C. § 271(g), despite the Federal Circuit's explicit holdings that § 271(g) does not apply to the transmission of information. *See NTP* at 1323 (stating that "[b]ecause the 'transmission of information' . . . does not entail the manufacturing of a physical product, section 271(g) does not apply to the asserted method claims"); *Bayer AG v. Housey Pharm., Inc.*, 340 F. 3d 1367, 1371 (Fed. Cir. 2003) (limiting the application of § 271(g) to physical products, and finding that § 271(g) does not apply to method claims that cover the transmission of information). ArrivalStar argues that Hapag-Lloyd can still infringe the asserted claims under § 271(g) because reports are provided to users of Hapag-Lloyd's accused services. But the asserted claims cover only the transmission of information, not creation of reports.

---

[3] Early in the case, Hapag-Lloyd advised ArrivalStar that this theory of patent infringement was flawed. In response, ArrivalStar demanded a settlement payment, noting that "settlement would cost far less than litigation." Given the legally baseless nature of ArrivalStar's claims, Hapag-Lloyd asked ArrivalStar to dismiss the case to avoid further litigation costs, but ArrivalStar refused. Hapag-Lloyd advised ArrivalStar that, if it persisted and required that Hapag-Lloyd file a motion to dismiss, then Hapag-Lloyd would seek attorneys fees and costs. Without response to the warning, ArrivalStar maintained the case, and Hapag-Lloyd had to file the instant motion.

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 3
(C11-00912 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

Specifically, the asserted patent claims explicitly claim "communication of a notification [to a user]" and "informing the user of the vehicle delay" respectively.[4] ArrivalStar's asserted claims do not cover methods directed to the manufacture of "products," as required by § 271(g). In fact, the two cases ArrivalStar cites to allegedly support its position illuminate the distinction between when § 271(g) is applicable - i.e. in cases where the claims are directed towards the manufacture of a "product," and when it is not - i.e. in cases where the claims are directed towards the transmission of information. *See Cnet Networks, Inc. v. Etilize, Inc.*, 528 F. Supp. 2d 985 (N.D. Cal. 2007) (finding that § 271(g) applies to claims directed toward "creating a product catalog," but not those limited to the transmission of information); *Ormco Corp. v. Align Tech., Inc.*, 609 F. Supp. 2d 1057 (C.D. Cal. 2009) (finding that § 271(g) may apply to claims covering "creation" of a 3D digital model of teeth, but does not apply to methods directed towards "mere 'abstract information'"). Those cases simply make clear that § 271(g) applies equally to claims directed towards the manufacture of "products," regardless of whether the "products" take electronic or purely physical form, a point which Hapag-Lloyd does not dispute. But here, there are no claimed "products;" the reports relied on so heavily in ArrivalStar's Opposition are not claimed in the subject patents. Accordingly, ArrivalStar's Opposition fails to establish a facially plausible claim that Hapag-Lloyd infringes the asserted claims under § 271(g), or any other theory, and its Complaint should be dismissed.

### III. ARGUMENT

A. **ArrivalStar's Complaint is Facially Implausible as the Asserted Claims Only Cover the Transmission of Information, which are Not Subject to 35 U.S.C. § 271(g) per *NTP***

1. <u>ArrivalStar Concedes No Infringement under 35 U.S.C. § 271(a); Hapag-Lloyd's Limited U.S. Presence is Irrelevant</u>

ArrivalStar does not even attempt to, and indeed cannot, rebut the fact that the location of Hapag-Lloyd's servers outside of the United States precludes a finding of infringement under 35 U.S.C. § 271(a) as a matter of law. *See, e.g., NTP*, 418 F.3d at 1318. Instead, ArrivalStar

---

[4] See claim 21 of the '359 patent and claim 1 of the '781 patent.

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 4
(C11-00912 RSM)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

attempts to show that Hapag-Lloyd has a "substantial U.S. presence," without explaining how such an alleged presence has any relevance to its infringement theory. ArrivalStar recognizes that "a claim for patent infringement requires a connection to the United States," but ArrivalStar then fails to make the connection.

2. <u>ArrivalStar's Sole Infringement Theory is 35 U.S.C. § 271(g), Even Though ArrivalStar Did Not Mention This Theory in the Complaint</u>

Thus, there is only one question before this Court on this motion:[5] whether or not Hapag-Lloyd can infringe the asserted patent method claims under 35 U.S.C. § 271(g). The Federal Circuit has clearly established that patent method claims can only be infringed if each step of the claimed method is performed within the United States. *NTP*, 418 F.3d at 1318. Hapag-Lloyd made clear in its motion to dismiss, and ArrivalStar did not dispute, that at least the following steps of claim 21 of the '359 patent require servers:

(a) permitting a user to predefine *at a computer system* one or more events that will cause creation and communication of a notification relating to the status of a mobile vehicle in relation to a location, . . . ;

(b) *tracking* movement of the vehicle as it moves toward the location; and

(c) *communicating a notification* on a status of the vehicle *from the computer system* to a user communication device upon occurrence of the one or more events by the vehicle during the travel . . . .

Similarly undisputed, all the steps of claim 1 of the '781 patent ("monitoring travel," "comparing planned timing of the vehicle," "contacting a user communications device," and "informing the user of vehicle delay") also require computer servers. Because Hapag-Lloyd's servers are located in Germany, it cannot possibly perform each of these steps within the United States, precluding an infringement under the Federal Circuit's decision in *NTP*.

---

[5] In the Opposition, ArrivalStar makes a curious argument that Hapag-Lloyd somehow "hid" its arguments to deny ArrivalStar's opportunity to respond, but notably, ArrivalStar's sole basis for maintaining this case is 35 U.S.C. § 271(g), despite the fact that § 271(g) was mentioned *nowhere* in ArrivalStar's Complaint. If ArrivalStar's position were to be accepted, defendants like Hapag-Lloyd could only respond to infringement allegations that they could omnisciently predict ahead of time; truly a tall task given the unconventional legal assertions in this case.

| | |
|---|---|
| DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 5 (C11-00912 RSM) | **Williams, Kastner & Gibbs PLLC**<br>601 Union Street, Suite 4100<br>Seattle, Washington 98101-2380<br>P (206) 628-6600; F (206) 628-6611 |

3266957.1

Moreover, the steps of the claimed method allegedly infringed by Hapag-Lloyd's servers entail nothing more than sending and receiving information (such as the asserted patent claims requiring "communication of a notification [to a user]" and "informing the user of the vehicle delay"), which the Federal Circuit specifically found to be outside the scope of § 271(g). *See NTP*, 418 F.3d at 1323. In fact, nothing in the asserted claims remotely suggests the manufacture of a physical product. This should be the end of the story.

But, in the Opposition, ArrivalStar claims to have found an exception to the Federal Circuit's rule in *NTP* regarding § 271(g). Specifically, citing *Cnet Networks* and *Ormco Corp*, ArrivalStar claims that the Federal Circuit's rule does not apply to a "product," and contends that the claimed methods pertain to products, even though the asserted method claims do not claim a product. Further, the patent claims at issue in the two cited cases directly pertain to products, although the ArrivalStar patent method claims do not.

For example, in *Cnet Networks*, the patent covered "a method for *creating a product catalogue* stored on computer readable media," unlike the "transmission of information" in *NTP* or the "communication of a notification [to a user]" and "informing the user of the vehicle delay" in this case. *See Cnet Networks*, 528 F. Supp. 2d at 993 (emphasis added). Indeed, in *Cnet Networks*, the district court concluded that § 271(g) covers claims directed towards the creation of a product; it did conclude not that § 271(g) covers claims restricted to the transmission of information. *Id.* In fact, the court explicitly confirmed the Federal Circuit's decision in *NTP* that § 271(g) is "inapplicable" to claims directed to the "transmission of information in the form of email messages." *Id.* at 995. The important distinction, the court held, is that "*NTP* is distinguishable because the claims [were] directed to the *creation and manufacture* of a catalog, not to its *transmission or delivery*." *Id.* (emphasis in original). In contrast, the ArrivalStar claims are directed to notifications of information via email, which the district court in *Cnet Networks* specifically held was not subject to § 271(g).

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 6 (C11-00912 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

Similarly, in *Ormco Corp.*, the patent covered "a system and method by which an orthodontic appliance is automatically *designed and manufactured* from digital low jaw tooth shape data" which is certainly not the "transmission of information" in *NTP* or the "communication of a notification" or "informing the user" in this case. *See Ormco Corp.*, 609 F. Supp. 2d at 1061 (emphasis added). In *Ormco Corp.*, the district court found that § 271(g) covered this "'creation' produced by 'practicing each step' of a patented process," which the court noted was "not a mere package of information." *Id.* at 1076. And clarifying the holding in *Cnet*, the court noted that "the electronic catalog … was not mere 'abstract information.'"[6] *Id.* at n.19. Again, in contrast to the very specific outputs, or the 3D models of *Ormco Corp.*, the ArrivalStar claims are directed to notifications (packages) of information, which the district court in *Ormco Corp.* specifically held was not subject to § 271(g). *Id.* at 1076.

Hapag-Lloyd does not dispute that, as *Cnet Networks* and *Ormco Corp.* point out, § 271(g) applies when the patents-at-issue are directed to the manufacture of "products" and that it makes no difference whether the "products" covered by the claims are in electronic or physical format. But, the distinction in *Cnet* and *Ormco.*, seemingly lost on ArrivalStar, is that § 271(g) is inapplicable to patents that claim the "transmission" or "communication" of information. Or, as put more simply by a Maryland district court, "[§ 271] subpart (g) does not apply to the transmission of electronic messages." *Technology Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 924 (D. Md. 2008) (referencing *NTP*).

3. Other Courts Have Confirmed That 35 U.S.C. § 271(g) Applies Only to the Manufacture of Products

Other courts have distinguished *Cnet Networks* and *Ormco Corp.* on the same basis Hapag-Lloyd now asserts. *See, e.g., Yangaroo, Inc., v. Destiny Media Tech.*, 720 F. Supp. 2d

---

[6] *Ormco* did not even decide that the digital 3D model was a "product" for the purposes of § 271(g), as ArrivalStar implies. *Ormco*'s actual holding is that "[s]ince Align has failed to establish either that the digital 3D model is not a 'product made' by a process patented in the United States or that the product subsequently undergoes a 'material change,' its motion for summary judgment as to Ormco's § 271(g) claim must be denied." *Id.* at 1077.

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 7
(C11-00912 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

1034 (E.D. Wis. 2010).[7] Similar to the present case, the district court in *Yangaroo* found that "the only remaining infringement claim is one under section 271(g)." *Id.* at 1036. And, exactly as here, the defendant in *Yangaroo* argued that its allegedly infringing process merely transmits information and was beyond the scope of § 271(g), while the plaintiff asserted that the claimed process produced a "product," covered by § 271(g), in the form of "encrypted music tracks." *Id.* After reciting the standards set forth in *NTP* and *Bayer*, the Court reached a telling conclusion, which, given the remarkable similarities with the present case, is worth repeating in its entirety:

> Unlike the patents at issue in *CNET* and *Ormco,* however, the '712 patent does not claim a method of creating or manufacturing the digital content that is received in servers and then transmitted to authorized recipients. What is claimed in the '712 patent is "a method of distributing content" that already exists. *The '712 patent claims no method or process for the creation of the content that Yangaroo argues constitutes the product that is essential to establish infringement under section 271(g)*. It therefore follows that Yangaroo's infringement claim must fail.
>
> *Yangaroo attempts to avoid this result by suggesting that the encryption of the preexisting content transforms it into a product made by Destiny's infringing process.* Yangaroo notes that Destiny's Rule 30(b)(6) witness, Steven Vestergaard, testified that Destiny's servers located outside the United States encrypt the data file before sending it to the authorized recipients, and argues that such encryption changes the constitution of the data file. While it is true that the content providers, such as music distributors, encode the digital content they upload to Destiny's servers, Yangaroo argues that because the data leaves the servers in a different arrangement of electrons when it is distributed, the Play MBE system in effect manufactures a new product. *But even assuming encrypting an existing data file amounts to manufacturing a product, the '712 patent does not claim such a process. The sole claim is a method of distribution.* Accordingly, Yangaroo's claim must fail.

*Id.* at 1038 (emphasis added).

Like the plaintiff in Yangaroo, ArrivalStar suggests that transmitting information in the form of a report or email somehow transforms it into a "product" made by Hapag-Lloyd. But, as Yangaroo shows, this distinction makes no difference: ArrivalStar's patents do not claim such a process. To reiterate, claim 21 of the '359 patent and claim 1 of the '781 patent merely cover

---

[7] Strangely, ArrivalStar does not mention *Yangaroo* in its Opposition, but this case could not have been easier to find. It is the *only* negative reference for both *Cnet* and *Ormco*, revealed by a simple citation check in Westlaw.

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 8
(C11-00912 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

"communication of a notification [to a user]" and "informing the user of the vehicle delay." ArrivalStar, as the patentee, no doubt carefully chose to direct the claims towards methods for transmitting notifications about the status of a vehicle. The asserted claims are simply not directed towards the creation or manufacture of a product of any kind and, thus, § 271(g) is not applicable. In fact, in accusing Hapag-Lloyd of infringement, ArrivalStar specifically states that "the ability to provide such *real-time information* to the customers . . . is the *principal value* of the real-time tracking services offered by Hapag-Lloyd." Opposition at 6 (emphasis added). Accordingly, as there is no facially plausible claim that Hapag-Lloyd could possibly infringe the asserted patent method claims under § 271(g), the Court should grant Hapag-Lloyd's motion to dismiss.

B. **Alternatively, If the Court Denies Hapag-Lloyd's Motion, The Court Should Grant Hapag-Lloyd's Request to Limit Discovery**

If the Court is not persuaded to dismiss the case at this time, Hapag-Lloyd then requests that the Court limit discovery to the resolution of the issues involving 35 U.S.C. § 271(g). As this Court recognized in *Elen*, in cases involving patent trolls (such as ArrivalStar), the costs of discovery disproportionately fall on defendants like Hapag-Lloyd. 2011 WL 3651113, at *5. ArrivalStar ignores this Court's guidance in *Elen* completely, suggesting that defendants should accept unlimited discovery without question, despite this Court's ruling that limitations on discovery in exactly the circumstances here are appropriate for judicial efficiency. Such limitations on discovery also promote the "just, speedy, and inexpensive determination of every action . . . ." Fed. R. Civ. P. 1.

Notably, ArrivalStar almost pleads with the Court to allow unlimited discovery in this case, so ArrivalStar can use the expense of discovery as a tool to pressure Hapag-Lloyd to settle. ArrivalStar shows its true colors, noting: "[t]he truth of the matter is that ArrivalStar has offered Hapag-Lloyd a license that costs far less than what the costs of litigation in this action are likely to be and that its principal competitors have already agreed to pay." The fact that ArrivalStar exhibits such surprise that Hapag-Lloyd would defend its rights, rather than accept an

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 9
(C11-00912 RSM)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

unnecessary license, shows how these extortive tactics have become deeply ingrained in ArrivalStar's ethos.

## IV. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Hapag-Lloyd's motion to dismiss, Hapag-Lloyd requests that this Court grant its motion and dismiss ArrivalStar's claims against Hapag-Lloyd (or grant summary judgment of non-infringement in favor of Hapag-Lloyd).[8] Alternatively, this Court should limit discovery to the threshold noninfringement issue concerning application of 35 U.S.C. § 271(g).

DATED this 7th day of October, 2011.

s/John A. Knox, WSBA #12707
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street
Suite 4100
Seattle, WA 98101-2380
(206) 628-6600
Email: jknox@williamskastner.com

Lionel M. Lavenue (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
(571) 203-2700
Email: lionel.lavenue@finnegan.com

R. Benjamin Cassady (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Ave., NW
Washington, D.C. 20001
P: (571) 203-2700; F: (202) 408-4400
Email: ben.cassady@finnegan.com

**Attorneys for Defendant Hapag-Lloyd USA, LLC**

---

[8] In its Opposition, ArrivalStar also seeks leave to file a sur-reply based on the issues involving § 271(g), but leave should be denied. ArrivalStar complains that Hapag-Lloyd did not directly address § 271(g), but ArrivalStar did not even mention § 271(g) in its Complaint. The Court should deny the request for leave to file a sur-reply.

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 10
(C11-00912 RSM)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 7, 2011 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Attorneys for Plaintiffs*

Philip P. Mann, WSBA # 28860
MANN LAW GROUP
Seattle Tower
1218 Third Ave., Suite 1809
Seattle, WA 98101
(206) 436-0900
Email: phil@mannlawgroup.com

John Whitaker, WSBA #28868
WHITAKER LAW GROUP
Seattle Tower
1218 Third Ave., Suite 1809
Seattle, WA 98101
(206) 436-8500
Email: john@wlawgrp.com

DATED this 7th day of October, 2011.

                                    s/John A. Knox, WSBA #12707
                                    WILLIAMS, KASTNER & GIBBS PLLC
                                    601 Union Street
                                    Suite 4100
                                    Seattle, WA 98101-2380
                                    (206) 628-6600
                                    Email: jknox@williamskastner.com

DEFENDANT HAPAG-LLOYD'S REPLY TO ARRIVALSTAR'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 11
(C11-00912 RSM)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
P (206) 628-6600; F (206) 628-6611

3266957.1